UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **XL INDUSTRIAL SERVICES, INC.** <br> 703 North Fail Road <br> LaPorte, Indiana 46350, <br><br> Plaintiff, <br><br> v. <br><br> **LIBERTY TERMINAL AT PENNSAUKEN URBAN RENEWAL LLC f/k/a LIBERTY TERMINAL AT PENNSAUKEN, LLC** <br> 2 Westchester Park Drive, Suite 107 <br> White Plains, New York 10604, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil Action No. 24-cv-06922-KMW-SAK <br><br><br><br> **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** |

## ANSWER

Defendant Liberty Terminal at Pennsauken Urban Renewal LLC, f/k/a Liberty Terminal at Pennsauken, LLC ("Liberty"), having an address of 2 Westchester Park Drive, Suite 107, White Plains, New York 10604, by and through its undersigned counsel, Waters, McPherson, McNeill, P.C., hereby files this Answer to the Complaint dated June 10, 2024 and filed by Plaintiff XL Industrial Services, Inc. ("XL"), having an address of 701 North Fail Road, LaPorte, Indiana 46350, and says:

### Parties

1.   Liberty admits the allegations contained in Paragraph 1.

2.   Liberty is without sufficient information to admit or deny the allegations contained in Paragraph 2 and leaves XL to its proofs.

3.   Liberty admits the allegations contained in Paragraph 3.

1

**Jurisdiction and Venue**

4. Liberty admits the allegations contained in Paragraph 4.

5. Liberty admits the allegations contained in Paragraph 5.

6. Liberty admits the allegations contained in Paragraph 6.

7. Liberty admits the allegations contained in Paragraph 7.

8. Liberty admits the allegations contained in Paragraph 8.

**Facts**

9. Liberty admits the allegations contained in Paragraph 9.

10. Liberty admits the allegations contained in Paragraph 10.

11. Liberty admits the allegations contained in Paragraph 11.

12. Liberty admits the allegations contained in Paragraph 12.

13. Liberty admits that XL sent a document identified as "Proposal #: 23Q-M1104" dated August 3, 2023 (the "Proposal"), the terms of which speak for themselves.

14. Liberty admits it sent Purchase Order # LTP-08072023-01 to XL on August 7, 2023 (the "Purchase Order", but denies that it "accepted" the terms of the Proposal.

15. Liberty admits the Proposal was physically attached to the Purchase Order but denies the implication that the Purchase Order is a binding and enforceable contract.

16. Liberty neither admits nor denies the provisions of the Purchase Order, which speak for themselves.

17. Liberty admits the allegations contained in Paragraph 17.

18. Liberty denies the allegations contained in Paragraph 18.

19. Liberty denies the allegations contained in Paragraph 19.

20. Liberty denies the allegations contained in Paragraph 20.

#1592783v1

21. Liberty admits the allegations contained in Paragraph 21 but denies Liberty ever advised XL that delivery of the pipe was expected on August 11, 2023.

22. Liberty admits the allegations contained in Paragraph 22 but denies the tasks performed were directed by Liberty or defined in the Proposal or Purchase Order.

23. Liberty admits the allegations contained in Paragraph 23. Liberty, by way of clarification, denies that it had previously told XL to expect delivery on August 11, 2023.

24. Liberty denies the allegations contained in Paragraph 24 and affirmatively states the first shipment of pipe in fact arrived on August 14, 2023.

25. Liberty denies the allegations contained in Paragraph 25.

26. Liberty admits that prior to August 21, 2024, XL performed other tasks on the property, but denies those tasks were productive, directed by Liberty, or set forth in Proposal or Purchase Order.

27. Liberty admits it was aware of XL's presence on the property but denies having knowledge of the specific tasks being performed or authorizing them. Liberty further denies that the work being performed directly related to the Proposal and Purchase Order, but instead related to other projects (projects that XL referenced in Paragraph 12 of the Complaint).

28. Liberty denies the allegations contained in Paragraph 28.

29. Liberty denies the allegations contained in Paragraph 29.

30. Liberty admits the allegations contained in Paragraph 30.

31. Liberty denies the allegations contained in Paragraph 31.

32. Liberty denies the allegations contained in Paragraph 32.

33. Liberty denies the allegations contained in Paragraph 33 and affirmatively contends it directed a cessation of work on August 24, 2023.

34. Liberty admits the allegations contained in Paragraph 34 and clarifies XL provided the revised proposal on September 1, 2023.

35. Liberty admits the allegations contained in Paragraph 35.

36. Liberty admits that on October 27, 2023 XL sent Liberty an invoice for a time period between August 7, 2023 and September 10, 2023 in the amount of $97,845.99. Liberty denies the remaining allegations contained in Paragraph 36.

37. Liberty admits it has not paid the amount in the Invoice and denies any legal, equitable, or contractual obligation to do so.

38. Liberty denies the allegations contained in Paragraph 38.

## COUNT I
## BREACH OF CONTRACT

39. Liberty incorporates its responses to Paragraphs 1 through 38 as if set forth at length herein.

40. Liberty denies the allegations contained in Paragraph 40.

41. Liberty denies the allegations contained in Paragraph 41 and denies the work that was performed was pursuant to the Proposal and Purchase Order.

42. Liberty denies the allegations contained in Paragraph 42.

43. Liberty denies the allegations contained in Paragraph 43.

44. Liberty denies the allegations contained in Paragraph 44.

45. Liberty denies the allegations contained in Paragraph 45.

**WHEREFORE**, Liberty demands judgment against XL:

A. Dismissing the Complaint with prejudice;

B. Awarding attorneys' fees and costs; and

C. Granting such other relief as the Court deems equitable and just.

## COUNT II
## ACCOUNT STATED

46. Liberty incorporates its responses to Paragraphs 1 through 45 as if set forth at length herein.

47. Liberty denies the allegations contained in Paragraph 47.

48. Liberty denies the allegations contained in Paragraph 48.

49. Liberty denies the allegations contained in Paragraph 49.

50. Liberty admits that on October 27, 2023, XL sent an invoice to Liberty but denies any legal, equitable, or contractual obligation to pay the invoice.

51. Liberty denies the allegations contained in Paragraph 51.

52. Liberty denies the allegations contained in Paragraph 52.

**WHEREFORE**, Liberty demands judgment against XL:

A. Dismissing the Complaint with prejudice;

B. Awarding attorneys' fees and costs; and

C. Granting such other relief as the Court deems equitable and just.

## COUNT III
## VIOLATION OF THE NEW JERSEY PROMPT PAYMENT ACT

53. Liberty incorporates its responses to Paragraphs 1 through 52 as if set forth at length herein.

54. Paragraph 54 contains a statement of law to which no response is required.

55. Paragraph 55 contains a statement of law to which no response is required.

56.  Paragraph 56 contains a statement of law to which no response is required.

57.  Paragraph 57 contains a statement of law to which no response is required.

58.  Paragraph 58 contains a conclusion of law to which no response is required. Liberty denies the term "contractor" is defined by the Prompt Payment Act.

59.  Paragraph 59 contains a conclusion of law to which no response is required.

60.  Liberty denies the allegations contained in Paragraph 60.

61.  Liberty denies the allegations contained in Paragraph 61.

62.  Liberty denies the allegations contained in Paragraph 62. Liberty further denies the applicability of the Prompt Payment Act.

**WHEREFORE**, Liberty demands judgment against XL:

A.  Dismissing the Complaint with prejudice;

B.  Awarding attorneys' fees and costs; and

C.  Granting such other relief as the Court deems equitable and just.

## COUNT IV
## QUANTUM MERUIT (in the alternative)

63.  Liberty incorporates its responses to Paragraphs 1 through 62 as if set forth at length herein.

64.  Liberty denies the allegations contained in Paragraph 64.

65.  Liberty denies the allegations contained in Paragraph 65.

66.  Liberty denies the allegations contained in Paragraph 66.

67.  Liberty denies the allegations contained in Paragraph 67.

68.  Liberty denies the allegations contained in Paragraph 68.

69.  Liberty denies the allegations contained in Paragraph 69

**WHEREFORE**, Liberty demands judgment against XL:

#1592783v1

  A. Dismissing the Complaint with prejudice;

  B. Awarding attorneys' fees and costs; and

  C. Granting such other relief as the Court deems equitable and just.

## COUNT V
## UNJUST ENRICHMENT (in the alternative)

  70. Liberty incorporates its responses to Paragraphs 1 through 69 as if set forth at length herein.

  71. Liberty denies the allegations contained in Paragraph 71.

  72. Liberty denies the allegations contained in Paragraph 72.

  73. Liberty denies the allegations contained in Paragraph 73.

  74. Liberty denies the allegations contained in Paragraph 74.

  75. Liberty denies the allegations contained in Paragraph 75.

**WHEREFORE**, Liberty demands judgment against XL:

  A. Dismissing the Complaint with prejudice;

  B. Awarding attorneys' fees and costs; and

  C. Granting such other relief as the Court deems equitable and just.

## COUNT VI
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

  76. Liberty incorporates its responses to Paragraphs 1 through 75 as if set forth at length herein.

  77. Paragraph 77 contains a statement of law to which no response is required.

  78. Paragraph 78 contains a statement of law to which no response is required.

  79. Liberty denies the allegations contained in Paragraph 79.

  80. Liberty denies the allegations contained in Paragraph 80.

81. Liberty denies the allegations contained in Paragraph 81.

**WHEREFORE**, Liberty demands judgment against XL:

A. Dismissing the Complaint with prejudice;

B. Awarding attorneys' fees and costs; and

C. Granting such other relief as the Court deems equitable and just.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

XL has failed to state a cause of action in the Counterclaims/Third-Party Complaint upon which relief can be granted.

### Second Affirmative Defense

XL's Counterclaims/Third-Party Complaint is frivolous pursuant Rule 11.

### Third Affirmative Defense

Liberty's Complaint is barred by the doctrines of estoppel and equitable estoppel.

### Fourth Affirmative Defense

XL's Complaint is barred by the doctrine of unclean hands.

### Fifth Affirmative Defense

XL's Complaint is barred as a result of its own wrongful conduct.

### Sixth Affirmative Defense

XL's Complaint is barred by the doctrine of laches.

### Seventh Affirmative Defense

XL's Complaint is barred by the doctrine of waiver.

### Eighth Affirmative Defense

XL's Complaint is barred by its own acts and omissions, and careless, reckless, and negligent conduct.

### Ninth Affirmative Defense

At all times relevant to this matter, Liberty has acted in good faith and in accordance with all applicable laws, regulations, and standard.

### Tenth Affirmative Defense

Liberty has caused no injury to XL.

### Eleventh Affirmative Defense

XL's Complaint is barred by the doctrine of mistake.

### Twelfth Affirmative Defense

XL has suffered no damages.

### Thirteenth Affirmative Defense

XL's Complaint is barred by the doctrine of impossibility.

### Fourteenth Affirmative Defense

To the extent that XL seeks recovery of damage which it has not yet incurred, all such damages are speculative.

### Fifteenth Affirmative Defense

XL's Complaint is barred by the doctrine of ratification.

### Sixteenth Affirmative Defense

XL's Complaint is barred, in whole or in part, by the doctrine of avoidable consequences.

### Seventeenth Affirmative defense

XL's Complaint is barred by his own misrepresentations.

### Eighteenth Affirmative Defense

XL's Complaint is barred by the Entire Controversies Doctrine.

### Nineteenth Affirmative Defense

XL has failed to mitigate damages.

### Twentieth Affirmative Defense

XL's Counterclaims/Third-Party Complaint is barred by the doctrine of frustration of purpose.

### Twenty-First Affirmative Defense

XL's Counterclaims/Third-Party Complaint is barred by the doctrine of accord and satisfaction.

### Twenty-Second Affirmative Defense

XL's Complaint is subject to set-off and recoupment from Liberty's claims against it.

### Reservation of Defenses and Objections

Liberty reserves the right to raise additional affirmative defenses and objections that may be discovered through the course of this litigation.

### COUNTERCLAIMS

Liberty, by way of Counterclaims against XL, says:

### The Parties

1. Liberty is a limited liability company organized under the laws of the State of New Jersey. Its members reside in New York and Maryland.

2. XL is a corporation organized under the laws of the State of Indiana.

#1592783v1

**Jurisdiction**

3. This Court has subject matter jurisdiction over the allegations contained in these Counterclaims because there is complete diversity of citizenship between the Parties, and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs. 28 U.S.C.A. § 1332(a).

4. Venue is property in this District because a substantial part of the events and omissions giving rise to these Counterclaims occurred in the State of New Jersey and this District. 28 U.S.C.A. § 1391(b)(2).

**Facts Common to all Counts**

5. Liberty owns a former Texaco fuel terminal located at 401 Cove Road, Pennsauken, New Jersey (the "Property"). Liberty is currently engaged in a multi-year project to redevelop the Property as a fuel distribution facility.

6. Liberty and XL entered into several written agreements pursuant to which XL would install certain piping and mechanical equipment on the Property in an area identified as Tank Farm B, and specifically Tanks 3, 4, 5, and 6 located within Tank Farm B (the "Tank Farm B Project")

    **A.** **The Truck Rack Contract**

7. One written agreement between Liberty and XL involving the Tank Farm B Project related to work to be performed for the installation of pipes and other fittings and equipment that would enable petroleum product to be pumped from and into commercial fuel transport trucks (hereinafter, the "Truck Rack").

8. XL issued a proposal dated January 3, 2022, and referenced as Proposal # 22Q-M1000 to construct the Truck Rack and undertake other work. The total amount set forth in that

11

proposal was $420,066, plus optional work to furnish pipe support ($26,388) and to furnish and install pipe shoes ($18,522).

9.  On January 10, 2022, Liberty and XL entered into a written agreement identifying certain work XL would undertake as part of the Tank Farm B Project (hereinafter, the "Truck Rack Contract").

10. The Truck Rack Contract incorporated project design and specifications for the Truck Rack.

11. XL undertook the work described by the Truck Rack Contract.

12. During the course of performance, the plans and specifications for the Truck Rack were altered and amended, with the mutual understanding and agreement of the Parties.

13. XL completed the work on the Truck Rack in or around December 2022. However, additional work had to be performed on the Tank Farm B Project before the Truck Rack could be made operational

14. Liberty has paid to XL all amounts due to XL for the performance of work under the Tank Farm B Project.

15. After completion of the Truck Rack, Liberty discovered after completion of the Truck Rack that the work performed by XL was not to the agreed upon plans and specifications, and that the work was inadequate for the intended purpose. Specifically, the lines for the Truck Rack were not properly elevated and were misaligned thereby impairing their functionality.

16. Liberty was forced to retain a new contractor to undertake the repairs to the Truck Rack to bring the work to the specifications that had been provided to XL. Liberty incurred substantial costs in additional expenses to correct the misalignments and improper elevations of the Truck Rack.

          **B.**      **Pile Caps Contract**

17. Another component of work relating to the Tank Farm B Project was the construction of pile caps (the "Pile Caps"). The Pile Caps are designed to support piping above ground. They are generally spaced twenty-five feet apart and elevate the pipe between eight to twelve feet above ground. Once completed, the piping would be installed on the Pipe Caps. The length of the pipes planned to be installed on the property was considerable, and thus there were many Pile Caps to be installed.

18. Liberty issued a purchase order identified as #22-M117 relating to the Pile Caps.

19. On or about January 4, 2023, Liberty and XL entered into a written agreement for XL to install and construct the Pile Caps (the "Pile Caps Contract").

20. XL undertook the installation of the Pile Caps during 2023 pursuant to design plans and specifications provided to XL. XL completed work around August 2023.

21. After construction, the next step would have been to install the pipes on the Pile Caps. However, as described above, Liberty terminated its relationship with XL (the subject of XL's Complaint against Liberty), and XL never installed the pipes themselves.

22. The new contractor hired by Liberty to replace XL and install the pipes discovered during the performance of its work that the Pile Caps installed by XL were not to specifications. Specifically, like the Truck Rack, the Pile Caps were not properly elevated and were misaligned. The incorrect installation would impair the functionality of the pipes, rendering the unusable as installed by XL.

23. Liberty's new contractor had to undertake further work realigning and repairing the Pile Caps installed by XL before work could proceed to install the pipes.

24. Liberty incurred substantial costs to repair and correct the improperly installed Pile Caps, to its detriment.

## First Count

## Breach of Truck Rack Contract

25. Liberty repeats and realleges all the statements contained in Paragraphs 1 through 24 of this Counterclaim as if set forth at length herein.

26. Liberty and XL entered into the Truck Rack Contract, pursuant to which XL agreed to perform the scope of work described therein.

27. XL represented in the Truck Rack Contract that it was familiar with the type of work involved with the Farm B Project.

28. XL was obligated under the Truck Rack Contract to construct the Truck Rack in accordance with the plans and specifications set forth in the agreement.

29. XL failed to construct and install the Truck Rack in accordance with the project plans and specifications.

30. XL's failure to follow the plans and specifications rendered the work performed unsatisfactory and unfit to be used for the intended purpose.

31. Liberty has paid XL all amounts due under the Truck Rack Contract.

32. As a consequence of the aforementioned detective installation, Liberty has been required to retain a new contractor to undertake repairs to the Truck Rack to bring the defective work undertaken by XL into compliance with the plans and specifications.

33. Liberty has incurred significant additional costs in undertaking the repairs to the Truck Rack work performed by XL, said work not conforming to the plans and specifications.

#1592783v1

34.     XL's failure to complete the construction of the Truck Rack in accordance with the project plans and specifications constitutes a breach of the expressed and implied promises and warranties in the Truck Rack Contract.

35.     XL's breaches of the expressed and implied promises and warranties contained in the Truck Rack Contract have damaged Liberty.

36.     Liberty's damages are compensable pursuant to the Truck Rack Contract.

WHEREFORE, Liberty demands judgment against XL as follows:

A.      Compensatory damages;

B.      Attorneys' fees and costs of suit; and

C.      Such other relief as the Court deems equitable and just.

## Second Count

## Negligence Construction of the Truck Rack

37.     Liberty repeats and realleges all the statements contained in Paragraphs 1 through 36 of this Counterclaim as if set forth at length herein.

38.     XL owed Liberty a duty to undertake the construction of the Truck Rack diligently and competently.

39.     XL breached that duty by failing to complete the Truck Rack according to the plans and specifications.

40.     XL has deviated from the ordinary standard of competence to which a construction firm claiming XL's knowledge and expertise would possess.

41.     Liberty has been damaged by XL's breach of its duty to diligently and competently undertake the construction of the Truck Rack, specifically, by having to retain a new contractor to repair the work and bring it into conformance with the plans for the Truck Rack.

42. Liberty's damages are the cost of undertaking the additional work with a new contractor.

43. XL's breach of its duties is the proximate cause of Liberty's damages.

WHEREFORE, Liberty demands judgment against XL as follows:

A. Compensatory damages;

B. Attorneys' fees and costs of suit; and

C. Such other relief as the Court deems equitable and just.

### Third Count

### Breach of Pile Caps Contract

44. Liberty repeats and realleges all the statements contained in Paragraphs 1 through 43 of this Counterclaim as if set forth at length herein.

45. Liberty and XL entered into the Pile Caps Contract, pursuant to which XL agreed to perform the scope of work described therein.

46. XL represented in the Pile Caps Contract that it was familiar with the type of work involved with the construction of the Pile Caps.

47. XL was obligated under the Pile Caps Contract to construct the Pile Caps in accordance with the plans and specifications set forth in the agreement.

48. XL failed to install the Pile Caps in accordance with the project plans and specifications.

49. XL's failure to follow the plans and specifications rendered the work performed unsatisfactory and unfit to be used for the intended purpose.

50. Liberty has paid XL all amounts due under the Pile Caps Contract.

51.     As a consequence of the aforementioned detective installation, Liberty has been required to retain a new contractor to undertake repairs to the Pile Caps to bring the defective work undertaken by XL.

52.     Liberty has incurred significant additional costs in undertaking the repairs to the Pile Caps work performed by XL, said work not conforming to the plans and specifications.

53.     XL's failure to construct and install the Pile Caps in accordance with the plans and specifications constitutes a breach of the expressed and implied promises and warranties in the Pile Caps Contract.

54.     XL's breaches of the expressed and implied promises and warranties of the Pile Caps Contract have damaged Liberty.

55.     Liberty's damages are compensable pursuant to the Pile Caps Contract.

WHEREFORE, Liberty demands judgment against XL as follows:

A.      Compensatory damages;

B.      Attorneys' fees and costs of suit; and

C.      Such other relief as the Court deems equitable and just.

## Fourth Count

### Negligence Construction of the Pile Caps

56.     Liberty repeats and realleges all the statements contained in Paragraphs 1 through 55 of this Counterclaim as if set forth at length herein.

57.     XL owed Liberty a duty to undertake the construction and installation of the Pile Caps diligently and competently.

58.     XL breached that duty by failing to complete the construction and installation of the Pile Caps according to the plans and specifications.

59. XL has deviated from the ordinary standard of competence to which a construction firm claiming XL's knowledge and expertise would possess.

60. Liberty has been damaged by XL's breach of its duty to diligently and competently construct and install the Pile Caps, specifically, by having to retain a new contractor to repair the Pile Caps to bring them into the plans and specifications.

61. Liberty's damages are the cost of undertaking the additional work with a new contractor.

62. XL's breach of its duties is the proximate cause of Liberty's damages.

WHEREFORE, Liberty demands judgment against XL as follows:

A. Compensatory damages;

B. Attorneys' fees and costs of suit; and

C. Such other relief as the Court deems equitable and just.

## **JURY TRIAL DEMAND**

A jury trial is demanded as to all issues raised in XL's Complaint and Liberty's Counterclaims.

## **CERTIFICATION PURSUANT TO LOC. CIV. R. 11.2**

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any Court or administrative proceeding.

## **DESIGNATION OF TRIAL COUNSEL**

Eric D. McCullough, Esq., is hereby designated as trial counsel.

#1592783v1

                                             WATERS, McPHERSON, McNEILL, P.C.
                                             Attorneys for Defendant/Counterclaimant
                                             Liberty Terminal at Pennsauken Urban Renewal, LLC

                                             By:    /s/    Eric D. McCullough
                                                            Eric D. McCullough (EM 6244)

Dated: August 12, 2024